## THE STATE v. BOHLE, Appellant.

**Division Two, May 31, 1904.**

1. **FALSE PRETENSES: Must Be Believed.** Unless the representations made by the defendant, charged with obtaining goods by false pretense, were believed to be true by the party to whom they were made, then the obtaining of the goods was not the result of false pretense, and hence it is necessary to show that the person to whom they were made believed them to be true.

2. ———: ———: **Evidence.** The evidence in this case, though not as satisfactory as it might be, is sufficient to support the finding of the jury, made in pursuance of correct instructions, that the false representations of the defendant induced the employees of a furniture company to sell the goods, and that they believed those representations to be true.

3. ———: **Verdict: Value of the Goods.** There is no necessity for the jury to incorporate in its verdict the value of the goods which defendant obtained by false pretense.

4. ———: ———: ———: **Punishment.** The indictment charged the goods obtained by defendant to be of the value of $91.50, and all the evidence showed them to be of that value, and that valuation was fixed by the contract which defendant signed in the name of another, after representing himself to be that other. The jury were directed to assess the punishment at imprisonment in the penitentiary if they found the goods of the value of thirty dollars or more, and they returned this verdict: "We, the jury in the above entitled cause, find the defendant guilty of obtaining property by means of false pretenses as charged in the indictment, and assess the punishment at imprisonment in the penitentiary for two years," etc. *Held,* that the verdict is not insufficient because it fails to state the value of the goods obtained by false pretense, but it necessarily follows that

the jury found the value of the goods to be thirty dollars or more, and hence it is sufficient, although a general verdict finding the defendant guilty in manner and form as charged in the indictment would have been more appropriate.

5. ————: ————: **How Tested.** The verdict of a jury is not to be tested by the technical rules of construction applicable to pleadings, but should be liberally construed in view of the issues tried, and all reasonable presumptions indulged to sustain it.

6. ————: **Execution of Note and Mortgage.** The execution of a note and chattel mortgage by defendant for the goods obtained by false pretense is no defense to a prosecution for that offense. And where such instruments are executed by him in the name of another, and he thereby succeeds in obtaining the goods, they only emphasize the fraud.

Appeal from St. Louis City Circuit Court.—*Hon. O'Neill Ryan,* Judge.

AFFIRMED.

*Charles Fensky* for appellant.

(1) The demurrer offered by the defense at the close of the State's case should have been sustained. (a) Defendant did not obtain goods on credit, but paid for them part in cash and part in notes, secured by chattel mortgage on the goods bought. The only way the vendor could be defrauded was by the vendee's disposing of or secreting the goods mortgaged to secure the debt, and in that case defendant would be liable to prosecution only under the statute against selling, disposing of or secreting mortgaged property. State v. Anderson, 47 Iowa 142; Griffin v. Pugh, 36 Mo. 479; Little v. Page, 44 Mo. 412; Ridgeway v. Kennedy, 52 Mo. 24. (b) There was no proof of a delivery to defendant. The indictment avers that defendant did not reside at 2306 Wash street, and defendant was not shown to have ever received the property after its delivery to some woman at said number, or ever to have had possession. Willis v. People, 19 Hun 84; Phelps v. Ct.

of Gen'l Sessions, 13 Hun 400; State v. McGinnis, 71 Iowa 685; Jamison v. State, 37 Ark. 445; Hernandez v. State, 20 Tex. App. 151; State v. Drew, 78 S. W. 594. (c) The evidence of the State negatived an intent to defraud because the goods were paid for in full, part in cash and part in secured notes. O'Connor v. State, 30 Ala. 9. (d) There was no evidence that the prosecuting witness relied upon the representations made by defendant and parted with the goods promoted by said representations. The fact that the vendor took secured notes in payment in full rebuts the idea that they relied upon the representations made to them. State v. Green, 7 Wis. 676; State v. Stout, 75 Iowa 215; State v. Evers, 49 Mo. 542. (2) The court admitted incompetent evidence over defendant's objection. (a) It was improper to allow witness Hercker to testify that he delivered the goods at 2306 Wash street to a woman claiming to be Mrs. Yeager. Defendant did not live there and was not present. The indictment does not charge that the person receiving the goods acted with appellant. State v. Fraker, 148 Mo. 165. (b) It was immaterial where the property and goods were found and recovered. It was improper to permit the State to show that they were found at the home of Mrs. Wetteroth on Jefferson avenue. (3) The verdict is insufficient as it fails to state the goods were of the value of thirty dollars or over. Clay v. State, 43 Ala. 350; In re Weber v. State, 10 Mo. 4.

*Edward C. Crow,* Attorney-General, and *Sam. B. Jeffries,* Assistant Attorney-General, for the State.

(1) A false pretense is a representation of some fact or circumstance calculated to mislead, which is not true. State v. Vorback, 66 Mo. 168. One false pretense is sufficient to maintain an indictment, although several be set up. State v. Vorback, 66 Mo. 168. The essence

of the crime to obtain money or property by false pretenses is that the false pretense should be a past event, a fact having present existence. State v. Delay, 93 Mo. 98; State v. Petty, 119 Mo. 425; State v. Janson, 88 Mo. 97; State v. Terry, 109 Mo. 601. (2) Counsel for defendant in his brief says, "There was no proof of the delivery to the defendant. The indictment avers that defendant did not reside at 2306 Wash street, and defendant is not shown to have received the property after it was delivered to some woman at that number, or ever to have had possession." It is true that defendant did not reside, as charged in the indictment, at 2306 Wash street, but the defendant knew of their delivery and afterwards of their transfer from that place to 1917 North Jefferson avenue. The record fully substantiates this fact, and the delivery of the goods at the request of the defendant to 2306 Wash street is sufficient to bind him, he, after his arrest, having stated to the officers that the goods were at 1917 North Jefferson avenue, where they were found. (3) The evidence is abundant to the effect that the prosecuting witness relied upon the representations made by defendant, and parted with the goods under the belief that these representations were true. The fact that a note secured by mortgage upon the property was taken, is a matter of no consequence, for the reason that the mortgage was executed by defendant under an assumed name, but even though it had been executed under his true name, if he had induced the company to accept the mortgage by false pretenses, the act would be criminal as well as if no mortgage had been given. No error was committed in permitting the witness Hercker to testify that he delivered the goods at 2306 Wash street to a woman claiming to be Mrs. Yeager. This is simply proof of what was done by reason of the representations and false pretenses of the defendant. In other words, it is a part of the transaction which constitutes the crime, and was necessary in order to determine whether or not the

State v. Bohle.

prosecuting witness had relied upon the truthfulness of the representations made by the defendant. (4) Nor was error committed in permitting the State to show that the goods were found at the home of Mrs. Wetteroth, on Jefferson avenue. Defendant had stated that they would be found at that place. This evidence was admissible for the purpose of showing that defendant was not only fully cognizant as to the whereabouts of the property from the time it was delivered at 2306 Wash street, but also until after his arrest. (5) It is charged that the verdict is insufficient, in that it fails to state that the jury found the goods to be of a value more than thirty dollars. This point is not well taken for the reason that all of the evidence in the case disclosed the fact that the goods were of the value of $91.50, and that that valuation was fixed by the contract is not denied or disputed by defendant. The evidence shows clearly that the goods were of that value and there is no evidence to the contrary. The jury therefore could find no other value than that which the disputed evidence shows. This being true, the fact that they did not make such a finding does not justify the reversal of the cause, as it is in no way prejudicial or injurious to the defendant's rights.

FOX, J.—This is an appeal from a judgment of conviction for obtaining property upon false pretenses.

Defendant was indicted and convicted of the crime of obtaining property under false pretenses. The indictment charges that he contrived, designed and intended to cheat and defraud the Peoples House Furnishing Company, a corporation, of its goods, wares and merchandise by means of false pretenses. The false pretenses used by the defendant in the perpetration of the offense are set out in the indictment in this way: "Did apply to and request the said Peoples House Furnishing Company, its officers, agents and servants to sell him a certain lot of furniture and merchandise, herein-

after set out and mentioned, on credit; and to induce the said Peoples House Furnishing Company to sell him the said goods on credit and to effect his design and intent to cheat and defraud the said Peoples House Furnishing Company, the said William Bohle, alias George Yeager, alias Louis Baldwin, did then and there designedly, feloniously and falsely pretend and state to the said Peoples House Furnishing Company, its officers, agents and servants that he, the said William Bohle, alias George Yeager, alias Louis Baldwin, was one George Yeager; that he was a workingman, receiving good wages and able to pay for said furniture and merchandise; that he was employed at the Lafayette brewery and had been so employed for a number of years; that he was then and there a married man and resided with his wife at No. 2306 Wash street in said city of St. Louis; that he would pay for said goods in installments of eight dollars the sixteenth day of each month following the sixteenth day of October, 1902; and the said Peoples House Furnishing Company, its officers, agents and servants, believing the said false pretenses and representations so made as aforesaid by the said William Bohle, alias George Yeager, alias Louis Baldwin, to be true and relying thereon were then and there induced by the said false pretenses and false representations aforesaid to then and there sell and deliver to him, the said William Bohle, alias George Yeager, alias Louis Baldwin," certain furniture described in the indictment. After charging the false pretenses as above stated, the indictment set out the property thus obtained and fixed its value at $91.50. It then negatives the false pretenses charged.

The principal witnesses upon whom the State must rely to maintain this conviction, was Mr. Sharp, the salesman for the furniture company, and Gustave A. Debus, to whom the pretenses and representations were made, and by whom the goods were sold to the defendant. Their testimony fully supports the charge in the indict-

ment as to the representations and pretenses, and other testimony by the State strongly tends to prove the falsity of the representations; but as to the essential allegations in the indictment, that the company or its agents believed the pretenses and representations to be true and relied upon them, and by reason thereof were induced to sell and deliver the goods to defendant, the testimony is not entirely satisfactory, however sufficient to support the finding.

After Mr. Sharp sold the defendant the goods and received ten dollars as part payment, the bookkeeper prepared the note and chattel mortgage to secure its payment. The bookkeeper states that the note and mortgage were signed by the defendant as Geo. Yeager. It will suffice to say that the testimony by the State tended to make out the case as charged in the indictment.

On the part of the defendant, there was testimony tending to prove good reputation for honesty and integrity; and the defendant, who testified in his own behalf, denied the testimony as given by Sharp and the bookkeeper of the company, and he further testified that the furniture was not purchased for himself, but for a man by the name of Yeager. Other witnesses were introduced, whose testimony tended to corroborate the testimony of the defendant as to the goods being bought for Yeager.

The court instructed the jury, and after submission of the cause, the jury returned the following verdict: "We, the jury in the above entitled cause, find the defendant guilty of obtaining property by means of false pretenses as charged in the indictment, and assess the punishment at imprisonment in the penitentiary for two years. Jacob M. Stuber, Foreman."

We will further discuss the testimony and instructions of the court, during the course of the opinion.

OPINION.

An examination of the record before us in this cause discloses two vital propositions for our consideration:

First. Was the testimony sufficient to authorize a conviction?

Second. Is the verdict as rendered sufficient to support the judgment upon it?

At the very threshold of the investigation of the questions involved in this cause, we are confronted with the well-settled legal proposition that it is an essential ingredient of the offense charged in this indictment that the party charged to have been defrauded should have believed the false representations to be true. This logically must be true, for unless the pretenses and representations were believed to be true, and at least partially induced the action of the party to whom they were made, then the obtaining of the property would not be the result of the false pretenses and representations.

This court, in State v. Evers, 49 Mo. l. c. 545, clearly announced the rule. It was thus stated in that case: "The essence of the crime of obtaining money or property by false pretenses is that the false pretense should be of a past event, or of a fact having a present existence, and not of something to happen in the future, and that the prosecutor believed that the pretense was true; and that, confiding in the truth of the pretense and by reason thereof, he parted with his money or property."

It was held in State v. Green, 7 Wis. 676, that in order to sustain a conviction for obtaining goods by false pretenses, it must be averred in the indictment and proved on the trial that the party defrauded was induced to part with his property in consequence of such representations.

The rule as announced by this court, and the other cases herein referred to, find support in Wharton's Crim-

inal Law (10 Ed.), sec. 1183; Commonwealth v. Dunleay, 153 Mass. 330, and cases cited; and it must be conceded that to support a conviction of the charge contained in the indictment, there must be some substantial evidence that the agents representing the furnishing company were induced to part with the property by reason of their reliance upon the representations of the defendant.

We have carefully read in detail the testimony of both Sharp and the bookkeeper who consummated this sale of the goods to the defendant, and while it must be frankly admitted the testimony is not as satisfactory to our minds as it should be, and doubtless could have been made so by propounding a few additional questions to the witnesses; still the jury were the triers of the facts and we have reached the conclusion there is sufficient evidence to support their finding upon this essential element of the offense.

The testimony of Sharp, at the very outset of the negotiations for this sale, indicates that he made a condition precedent to the sale of the goods; that is, that defendant must satisfy him that he was all right. Mr. Sharp stated in his testimony: "I told him of course we were selling goods on credit and if he could show us that he was a working man and would pay his debts and was all right we would be glad to sell him the bills on the terms he wanted. I went through and showed him a few goods that he wanted to look at and the bill amounted to $91.50."

The bookkeeper emphasizes the conclusion of the jury upon this element of the offense. He testifies that after having selected the goods, the defendant told him his name was George Yeager. This witness, the bookkeeper, whose name was Gustave A. Debus, upon cross-examination by counsel for defendant as to the inducement in making the sale, said:

"Q. Notwithstanding Mr. Sharp had it written out you were careful to ask him his name? A. Yes, sir; I do that in all cases.

"Q. He said that he had been working at the Lafayette brewery for some time? A. Yes, sir; nearly twelve years.

"Q. He satisfied you in regard to your willingness to selling that furniture? A. Yes, sir; on that reputation we sold him the goods.

"Q. You proceeded to make out the papers then, did you? A. Yes, sir.

"Q. He signed the note? A. Yes, sir; and the mortgage, too."

It is clear from a careful analysis of all the testimony that the agents of the furnishing company believed the representations of defendant to be true, and the inference is irresistible that their reliance upon them induced the sale and delivery of the property.

Upon the second proposition, as to the contention urged that the verdict is insufficient because it fails to state the value of the goods obtained by the false pretenses, the charge in the indictment and the evidence before the jury must be taken into consideration with the form of the verdict. The verdict was: "We, the jury in the above entitled cause, find the defendant guilty of obtaining property by means of false pretenses as charged in the indictment, and assess the punishment at imprisonment in the penitentiary for two years."

The indictment charged the goods to have been of the value of $91.50. All the evidence shows that the goods were of that value and that valuation, moreover, was fixed by contract, and there is absolutely not the slightest evidence that they were of less value than thirty dollars. The value of the goods as charged in the indictment was not a controverted question in the trial of the cause; about that, there was no dispute. There was no necessity of the jury incorporating the value of the goods in their verdict. We know of no legal rule which required them to do so. They were directed by the instructions of the court to assess the punishment at imprisonment in the penitentiary, if they found the goods

of the value of thirty dollars or more. Their verdict was responsive to the directions of the court, by finding him guilty of obtaining property by means of false pretenses as charged in the indictment, and assessing his punishment at imprisonment in the penitentiary. It can not be maintained that they did not respond to the issue presented to them. They were told that if they found the value of the goods to be thirty dollars or more, to assess the punishment at imprisonment in the penitentiary; having assessed his punishment at imprisonment in the penitentiary, it must logically follow that they found the value of the goods to be of that amount which authorized such imprisonment. There being no express requirement that the jury should expressly state the value of the goods in their verdict, and being prohibited from assessing a punishment at imprisonment in the penitentiary unless the goods were of the value of thirty dollars or more, the finding of the jury, and their assessment of the punishment at imprisonment in the penitentiary, are conclusive that they found the value of the goods to be thirty dollars or more; especially is this true when all the evidence, without contradiction, was that the goods were of the value of $91.50.

The uniform expressions of all the courts is that the verdict of a jury is not to be tested by the technical rules of construction which are applicable to pleadings; but should be liberally construed in view of the issues tried, and all reasonable presumptions are indulged to sustain the verdict and that the jury has found all the facts necessary to support it. [22 Ency. Pl. and Pr., 959 and 960, notes 2 and 3, and cases cited; State v. Craige, 89 N. C. 475; Honeycut v. Angel, 4 Dev. & Bat. (N. C.) 306.]

Under the evidence in this cause, there being no dispute as to the value of the goods, while a general verdict, finding the defendant guilty in manner and form as charged in the indictment (the indictment charging the value of the property), would have been more ap-

propriate; still we are of the opinion that the verdict as rendered, will support the judgment.

Appellant complains that there was no proof of delivery of the goods. There is no merit in this contention; the testimony on the part of the State shows that he bought the goods upon the representations made, and requested their delivery to a certain address and that he knew of that transfer to the place where he told the officers the goods could be found.

The action of the court in overruling the objections of appellant to the testimony of witness Henry Hercker was clearly correct. He simply detailed what was done in the way of delivering the goods, and that was a part of the transaction, and the fact that the defendant stated to the officers afterwards where the goods were located, indicates clearly that he was fully cognizant of the delivery of the goods at the place he indicated in the first instance, and their transfer to the place where they were finally recovered.

The testimony in the case fully warranted the finding of the jury, and the execution of the note and chattel mortgage for the goods constitutes no defense to this prosecution. The execution of these instruments under an assumed name, instead of relieving the defendant, only emphasizes the fraud perpetrated.

The instructions were full, covered every feature of the law to which the facts were applicable, and indeed were very favorable to the defendant.

Finding no reversible error, the judgment of the trial court should be affirmed, and it is so ordered. All concur.